# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL ARTHUR HELEVA,** : | **CIVIL NO. 1:07-CV-1398** |
| Petitioner : | **(Chief Judge Conner)** |
| v. : | |
| **WARDEN MRS M. BROOKS, and** : | |
| **PA STATE ATTORNEY GENERAL,** : | |
| Respondents : | |

## MEMORANDUM

On August 1, 2007, petitioner Daniel Arthur Heleva ("Heleva") filed his original petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court of Common Pleas of Monroe County. (Doc. 1). He is presently proceeding via an amended petition for writ of habeas corpus. (Doc. 35). For the reasons discussed below, the court will deny the amended petition.

## I. Procedural History

As stated *supra*, Heleva filed his initial petition for writ of habeas corpus on August 1, 2007. (Doc. 1). Respondents argued in their response that the petition was subject to dismissal because Heleva "had not completed one full round of the state's established review process before seeking federal review of the issues raised in the instant petition." (Doc. 7, at 5). On October 3, 2007, the court determined that the stay and abeyance rule announced in Crews v. Horn, 360 F.3d 146, 151 (3d

Cir. 2004) was inapplicable because the petition was not a mixed petition, and dismissed the petition for failure to exhaust state court remedies. (Doc. 19). Heleva filed a timely notice of appeal. (Doc. 24).

On October 6, 2009, the United States Court of Appeals for the Third Circuit issued a mandate vacating the October 3, 2007 order and "remand[ing] the matter to the District Court for it to decide whether Heleva is eligible, under the good cause test, for the stay-and-abeyance procedure set forth by the Supreme Court in Rhines [v. Weber, 544 U.S. 269 (2005)] and endorsed in Pace [v. DiGuglielmo, 544 U.S. 408 (2005)] as governing just this type of situation." (Doc. 31-2, at 3-4, n. 1). On December 9, 2009, this court stayed the proceedings pending Heleva's exhaustion of state court remedies. (Doc. 33).

On February 12, 2013, the court granted Heleva's motion to reopen the case. (Doc. 41). However, because Heleva mistakenly represented that exhaustion was complete, on October 18, 2013, the court again stayed the proceedings pending Heleva's exhaustion of his claim that trial counsel was ineffective for failing to assert a speedy trial violation, the sole issue before this court. (Doc. 66).

On July 20, 2016, after Heleva's compliance with the exhaustion requirement, the action was reopened. (Doc. 76).

## II. State Court Proceedings

Following a jury trial, Heleva was convicted in the Court of Common Pleas of Monroe County of first degree murder (accomplice liability), conspiracy to commit aggravated assault, unlawful restraint, tampering with evidence, and four counts of endangering the welfare of children. (Doc. 17, at 23). On March 4, 2005, he was

2

sentenced to a term of life imprisonment, and term prison sentences which were ordered to run consecutive to the life term. (Id.)

Heleva pursued direct appeal proceedings. (Id. at 29; see also electronic docket sheet for Commonwealth v. Heleva, Superior Court of Pennsylvania, 896 EDA 2005, found at http://ujsportal.pacourts.us). In a *per curiam* order dated December 5, 2005, the Pennsylvania Superior Court dismissed Heleva's direct appeal because he failed to file a brief.

On December 5, 2006, Heleva filed a petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46, claiming that his appellate counsel was ineffective for failing to file a brief on direct appeal. (Doc. 17, at 42). On January 8, 2007, Heleva submitted a separate filing wherein he alleged that his constitutional right to a speedy trial was violated because his signature on a May 7, 2004 Rule 600 waiver form was forged. See Commonwealth v. Heleva, 2016 WL 280461, *2 (Pa. Super. 2016). On April 16, 2010, the PCRA court granted Heleva's PCRA petition, concluding that appellate counsel was ineffective for failing to file an appellate brief. It restored his direct appeal rights *nunc pro tunc*. Commonwealth v. Heleva, 26 A.3d 1177, 1255 EDA 2010 (Pa. Super 2011), appeal denied, 30 A.3d 487 (Pa. 2011). The PCRA court denied relief regarding Heleva's claim that the Rule 600 form was forged. Id.

On March 3, 2011, the Pennsylvania Superior Court affirmed Heleva's judgment of sentence. See Commonwealth v. Heleva, 2016 WL 280461, at *2. The Pennsylvania Supreme Court subsequently denied Heleva's petition for allowance of appeal. Id.

3

On June 27, 2012, Heleva filed a second *pro se* PCRA petition asserting that trial counsel was ineffective for failing to raise a Rule 600 defense. Id. Specifically, Heleva asserted that his trial should have commenced by June 26, 2004, within 120 days after a panel of the Superior Court denied an interlocutory appeal on February 26, 2004, and that the Commonwealth failed to establish that it exercised due diligence in bringing him to trial. Id. Counsel was appointed to represent Heleva, and filed an amended petition on March 28, 2014. Id. On May 30, 2014 and July 28, 2014, PCRA evidentiary hearings were held. Id. On October 27, 2014, Heleva filed a petition to waive counsel and proceed *pro se*. Id. The court granted Heleva's request to proceed *pro se* and counsel was granted leave to withdraw. Id. On December 1, 2014, Heleva filed a *pro se* brief, arguing that trial counsel failed to raise a Rule 600 defense, that his May 7, 2004 Rule 600 waiver was involuntary or fraudulent, and that the Commonwealth failed to meet its burden of proving the exercise of due diligence in bringing him to trial. See (Doc. 78-5, PCRA Court Opinion, dated March 13, 2015, at 6). On March 13, 2015, the PCRA court denied Heleva's petition. Id. Heleva filed an appeal with the Pennsylvania Superior Court. See (Doc. 78-6).

On January 22, 2016, the Pennsylvania Superior Court affirmed the PCRA court's decision. Commonwealth v. Heleva, 2016 WL 280461. The Superior Court adopted the "sound reasoning" of the PCRA court as follows:

> The PCRA court has provided a well-reasoned discussion of its disposition. See PCRA Court Opinion, 3/13/2015, at 7-23 (finding: (1) counsel was not ineffective because Heleva had not met his burden in proving that the May 7, 2004, waiver was either forged or unknowing and involuntary, where he had signed two prior Rule 600 waivers, the

4

> waiver at issue specifically referred to the petition for permission to appeal *nunc pro tunc* he intended to file, trial counsel testified that Heleva did sign the document, and Heleva's handwriting expert, Kittel, could not testify to a reasonable degree of certainty whether Heleva's signature was or was not genuine; (2) counsel was not ineffective for failing to seek dismissal under Rule 600 because the court did not violate Heleva's speedy trial rights where (a) the proper count was 365 days, and, (b) including all delays attributable to the defense, based upon the waivers appearing of record, that period expired on July 26 2005, and Heleva's trial began on November 3, 2004; and (3) because Heleva did not meet his burden of proof by a preponderance of the evidence, his request for a second expert was not necessary).

Id. at *3 (footnote omitted).

### III. **Discussion**

Heleva contends that he was essentially denied the right to a speedy trial based on counsel's failure to move for dismissal under Rule 600 and that the Rule 600 waiver forms were fraudulent.[1] (Doc. 35, at 9-13). A collateral attack based on the Sixth Amendment's guarantee of effective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this claim, a defendant must demonstrate, *first,* that trial counsel's representation fell below an objective level of reasonableness based upon prevailing professional norms and, *second*, that the deficient representation prejudiced the defendant. See id. at 687-88. A defendant must establish both elements to obtain relief. See United States v. Washington, 869 F.3d 193, 204 (3d Cir. 2017).

Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. Id. at 687-89. This requires a

---

[1] Heleva's claims are somewhat difficult to decipher, and the court has made every effort to view them broadly in light of his *pro se* status. See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244-46 (3d Cir. 2013) (noting that *pro se* pleadings are to be liberally construed).

5

showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 562 U.S. 86, 104 (2001) (quoting Strickland, 466 U.S. at 687). When a federal habeas petitioner advances an ineffective assistance of counsel claim that a state court has already rejected on its merits, he is faced with "the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). Under this "doubly deferential" standard, the court must "give[ ] both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 134 S.Ct. 10, 13 (2013). Indeed, a federal habeas court is "required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons petitioner's counsel may have had for proceeding as he did." Branch v. Sweeney, 758 F.3d 226, 235 (3d Cir. 2014) (quoting Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011)) (alterations omitted). With respect to the prejudice prong of the Strickland test, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The court first considers Heleva's potential claim under the state speedy trial rule, PA. R. CRIM. P. 600. Criminal proceedings commenced when a criminal complaint was filed against Heleva on November 26, 2001. See Commonwealth v. Heleva, CP-45-CR-0000249-2002. Heleva's jury trial began on November 3, 2004. Id. Heleva argues that his trial should have commenced no later than June 26, 2004, within 120 days after a panel of the Superior Court denied an interlocutory appeal

6

on February 26, 2004. (Doc. 35, at 8). Specifically, he asserts a violation of the state speedy trial rule, which requires a trial to commence within 120 days after the date of remand. (Id.) (citing PA. R. CRIM. P. 600). Heleva further claims that trial counsel forged his signature on the Rule 600 waiver form. (Doc. 35; Doc. 79, at 2).

The PCRA court considered Heleva's ineffectiveness claim with respect to his Rule 600 speedy trial claim and his claim that the waiver was forged. (Doc. 78-5, PCRA Court Opinion, dated March 13, 2015). The Pennsylvania Superior Court adopted the reasoning of the PCRA court, and denied these claims on the merits, finding:

> (1) counsel was not ineffective because Heleva had not met his burden in proving that the May 7, 2004, waiver was either forged or unknowing and involuntary, where he had signed two prior Rule 600 waivers, the waiver at issue specifically referred to the petition for permission to appeal *nunc pro tunc* he intended to file, trial counsel testified that Heleva did sign the document, and Heleva's handwriting expert, Kittel, could not testify to a reasonable degree of certainty whether Heleva's signature was or was not genuine; (2) counsel was not ineffective for failing to seek dismissal under Rule 600 because the court did not violate Heleva's speedy trial rights where (a) the proper count was 365 days, and, (b) including all delays attributable to the defense, based upon the waivers appearing of record, that period expired on July 26 2005, and Heleva's trial began on November 3, 2004; and (3) because Heleva did not meet his burden of proof by a preponderance of the evidence, his request for a second expert was not necessary).

Commonwealth v. Heleva, 2016 WL 280461, at *3 (citing PCRA Court Opinion, dated March 13, 2015, at 7-23).

The state PCRA court, whose reasoning was explicitly adopted by the appellate court, also denied Heleva's claim that the Rule 600 waiver form was forged or unknowing and involuntary, finding:

7

Mr. Heleva has not met his burden of proving that the May 7, 2004 waiver was forged or that it was not a knowing and voluntary waiver. To review the evidence on this point, the Defendant was charged with criminal homicide on November 26, 2001. He filed an omnibus pretrial motion on May 1, 2002. Those proceedings excluded 141 days from the Rule 600 deadline.

The Commonwealth was prepared for trial in January, 2003, which met Rule 600 requirements. Mr. Heleva retained Attorney Fannick to represent him, who filed a motion for continuance, along with Mr. Heleva's first written waiver of Rule 600 through June 30, 2003.

The Commonwealth obtained a status conference with the court on June 30, 2003, the last day of Mr. Heleva's waiver. Mr. Heleva signed a second Rule 600 waiver on June 30, 2003, again waiving his right to speedy trial until October 3, 2003. Both of these continuances were granted at Mr. Heleva's request to allow his counsel to prepare for trial. The Commonwealth had been prepared for trial in January and was requesting a trial date at the June, 2003 conference.

The court scheduled jury selection for September 29, 2003, which was well within the Rule 600 deadline. On September 18, 2003, Mr. Heleva filed a Motion to Quash Aggravating Factors, seeking to remove the aggravating factor or torture from Mr. Heleva's capital trial. This would have removed the possibility of the death penalty for Mr. Heleva. The court addressed Mr. Heleva's motion on the day of jury selection. The motion was denied, but Mr. Heleva's request for leave to seek permission for an interlocutory appeal on the question was granted. Mr. Heleva again waived his Rule 600 rights on the record that day. 9/23/2003, NT, at 8. The jury was then released and the matter was stayed pending appeal. Mr. Heleva's counsel did not properly pursue the petition to the superior court, and on April 6, 2004, the superior court transmitted the record back to this court.

The Commonwealth then filed a motion for a status conference on May 5, 2004, again seeking a trial date for the third time. The conference was scheduled by the court for May 10, 2004 but Mr. Heleva filed the waiver before that date and the conference was cancelled. Again, Mr. Heleva sought a delay of trial so he could pursue an interlocutory appeal, now *nunc pro tunc*, of the court's denial of the motion to quash torture as an aggravating circumstance. The court allowed Mr. Heleva to pursue this new motion to the appellate court. The third Rule 600 written waiver, signed by Mr. Heleva and his counsel, was filed on May 7, 2004. The waiver specifically referred to

8

> Mr. Heleva's Petition for Permission to Appeal, Nunc Pro Tunc. So once more, Mr. Heleva sought to delay trial to attempt to exclude consideration of the death penalty from the jury. The waiver was directly to his benefit.
>
> Mr. Heleva has testified that he did not sign the waiver. However, his counsel has testified that he did. The circumstances cited above indicate his counsel's testimony is more credible on this point. It was to Mr. Heleva's significant benefit to overturn the trial court's ruling on the aggravated circumstance of torture. It is reasonable that Mr. Heleva would sign such a waiver at that time. Mr. Heleva had the signatures reviewed by an expert; Mr. Kittel could not testify to a reasonable degree of certainty that Mr. Heleva's signature was or was not genuine.
>
> As previously stated, Mr. Heleva did not meet his burden of proof by a preponderance of the evidence on this question. Although he asked for another expert, the court sees no necessity in the absence of credible evidence, to allow him to keep looking for one. Attorney Fannick had no reason to file a Rule 600 motion and he will not be found to be ineffective because of a failure to do so.

(Doc. 78-5, PCRA Court Opinion, dated March 13, 2015, at 19-22).

As the Third Circuit has previously recognized:

> Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.

Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Accordingly, to the extent Heleva asserts that the delay violated his rights under the state speedy trial rule, this claim is simply not cognizable in a federal habeas proceeding.

However, Heleva's claim that he was denied a speedy trial in violation of the Sixth Amendment is cognizable on federal habeas review. In Barker v. Wingo, 407

9

U.S. 514 (1972), the United States Supreme Court held that to determine whether a person's constitutional right to a speedy trial had been violated, a court must consider four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice that resulted from the delay. Barker, 407 U.S. at 530. See also Heiser v. Ryan, 15 F.3d 299 (3d Cir. 1994); Burkett v. Cunningham, 826 F.2d 1208 (3d Cir. 1987).

The first factor, the length of the delay, is a threshold factor or "triggering mechanism" for the vesting of a constitutional speedy trial right. Barker, 407 U.S. at 530. If the delay is not "presumptively prejudicial," then there is no need to even consider the other factors that go into the balance because there is no speedy trial claim. Id. "If the delay is sufficiently long, courts assess the extent to which the delay was long enough to 'intensify' the prejudice caused by the delay." United States v. Battis, 589 F.3d 673, 678 (3d Cir. 2009). "Longer delays can be tolerated, for example, when the crime is very serious or complex." Wells, 941 F.2d at 257. In the present case, the criminal complaint was filed on November 26, 2001, and Heleva's trial began on November 3, 2004. Given that Heleva's delay was roughly three years, the court must weigh the remaining Barker factors. See, e.g., Hakeem v. Beyer, 990 F.2d 750, 760 (3d Cir. 1993) (finding that a fourteen-and-one-half month delay is sufficient to warrant inquiry into the other Barker factors).

The second factor, the reason for delay, is to be given different weight based upon the nature of the reason. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." Barker, 407 U.S. at 531. "A more neutral reason such as negligence or overcrowded courts

should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id. "Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." Id. The government bears the burden to justify the delay. Hakeem, 990 F.2d at 770. In the case at bar, Heleva filed pretrial motions, obtained numerous continuances, and signed waivers of his right to a speedy trial. (Doc. 78-1, N.T. May 30, 2014, at 33-44). These are appropriate justifications for the delay, and thus weigh against Heleva's speedy trial claim.

Heleva's allegations that the Rule 600 waivers were obtained fraudulently, and that he did not knowingly waive his constitutional right to a speedy trial are clearly undermined by the record.[2] Notably, a hearing was held on September 29, 2003, the third time Heleva's trial was scheduled to commence. (Doc. 78-4). At this hearing, Heleva waived his right to a speedy trial, and was informed of his Rule 600 rights as follows:

> THE COURT: He understands for purposes of the application of Rule 600 this will count against him?
>
> MR. FANNICK: Yes, Your Honor. Maybe again for purposes of clarification of the record I know that the Defendant had previously signed a waiver of his rights pursuant to Rule 600, which I believe is only until like the second week of October.

---

[2] As stated *supra*, the state PCRA court and the Pennsylvania Superior Court specifically addressed and rejected Heleva's claim that the May 7, 2004 Rule 600 waiver was either forged or unknowing and involuntary. See Commonwealth v. Heleva, 2016 WL 280461, at *3 (citing PCRA Court Opinion, dated March 13, 2015, at 7-23).

11

> MR. PAZUHANICH: My recollection is that he agreed to waive Rule 600 until October 6th.
>
> MR. FANNICK: Right. Something along those lines.
>
> THE COURT: Now, Mr. Heleva, you understand there won't be a trial but your lawyer is asking for this court to certify this matter for appeal with the appellate court. If that happens, there is no telling when the appellate court will render a decision in the case. It could be sometime in the future but it certainly won't be anytime within the next few weeks because the normal process to filing the papers go along with the appeal. You should understand that you will not have a trial by October 7th. Do you understand that?
>
> THE DEFENDANT: I understand.
>
> THE COURT: I can't tell you when that will take place. It may be six months; it may be a year from now. But you will be sitting the entire time and won't be heard to complain about the fact that you didn't have a speedy trial because there is a jury ready to be impaneled in the next room at this time. If you want to go to trial, you can start today.
>
> THE DEFENDANT: I would like to confer with my lawyer for a moment.
>
> THE COURT: You may.
>
> THE DEFENDANT: I would like to waive my right, Your Honor.
>
> THE COURT: You agree that you will not raise any issue with Rule 600 in the defense of the proceeding while it is pending on appeal?
>
> THE DEFENDANT: I understand that.

(Doc. 78-4, N.T. September 29, 2003, at 7-8).

The record also contains Rule 600 waivers dated December 20, 2002, June 30, 2003, and May 7, 2004. (Doc. 78-1). The record further reflects that the Commonwealth sought to bring Heleva's case to trial in January 2003, June 2003, September 2003, May 2004, and July 2004. (Doc. 78-5, at 23). However, defense

12

requests for continuances were granted each time until July 2004. (Id.) The record establishes that the vast majority of trial delays were attributable to defense counsel, not the prosecution. Therefore, this factor weighs heavily against Heleva.

The third Barker factor, whether the defendant asserted his right to a speedy trial, also weighs against Heleva. "[A] defendant's claim that the right is being violated provides strong evidence that it actually was violated." Battis, 589 F.3d at 681. Heleva's first assertion of this claim occurred post trial, in a *pro se* document dated January 8, 2007, asserting that his constitutional right to a speedy trial was violated because his signature on a Rule 600 waiver form was forged. The record does not reflect that Heleva pursued this claim any further, and he did not file any formal motions asserting a violation of his constitutional right to a speedy trial. Rather, Heleva's second *pro se* PCRA petition only asserted a violation of his state speedy trial right.

The fourth Barker factor is prejudice to the defendant. This final factor is assessed "'in light of the interests . . . which the speedy trial right was designed to protect.'" Battis, 589 F.3d at 682 (quoting Barker, 407 U.S. at 532). The Barker court identified three types of prejudice resulting from a prolonged trial date: oppressive pretrial incarceration, anxiety and concern about the impending trial, and possible impairment of the defense. Barker, 407 U.S. at 532. Heleva does not claim that the "conditions of his confinement" made his pretrial incarceration prejudicial, Hakeem, 990 F.2d at 761, he has made no allegations that would establish any prejudice, and he offers no theory as to how the delay impaired his defense. Specifically, he has not pointed to any witnesses or evidence that became

13

unavailable during the delay. Thus, Heleva failed to establish actual prejudice and this factor does not weigh in his favor. See Vanlier v. Carroll, 384 F. App'x 155 (3d Cir. 2010) (upholding denial of speedy trial claim regarding more than two-year delay for lack of prejudice).

Considering all of the Barker factors together, the court concludes that they weigh against Heleva. As such, it follows that Heleva's trial counsel could have reasonably concluded that a constitutional speedy trial motion would not likely be successful. Heleva is therefore unable carry his burden under Strickland of showing that his counsel's representation "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Consequently, this claim will be denied.

## IV. **Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether

14

the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, a COA will not issue.

**V.      Conclusion**

For the reasons set forth above, the amended petition for writ of habeas corpus will be denied. A separate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:         January 9, 2018